Robert F. Thompson, Esq. Paragould Housing Authority c/o 414 West Court Street Paragould, AR 72450
Dear Mr. Thompson:
You have requested my opinion, pursuant to A.C.A. § 25-19-105(c)(3)(B), a section of the Freedom of Information Act (FOIA) (A.C.A. § 25-19-101
through -109) (Repl. 1996 Supp. 2001), concerning whether to release to The Jonesboro Sun records relating to the recent dismissal of the Executive Director of the Paragould Housing Authority (PHA). Specifically, the newspaper has asked to examine those portions of her personnel file "that constitute a record of the performance or lack of performance of the individual in question." In your response to the paper's written request, you indicated that the employee may yet exercise her right to request a review by the PHA Board of Commissioners. You further responded that you did not believe the employee's "individual privacy interests would be out weighed by a substantial and compelling public interest." In seeking guidance, you have supplied me the employee's entire personnel file and asked me to opine whether "there is a compelling public interest in the disclosure of this personnel file after the final Administrative Resolution of her status."
I should note at the outset that your reference to "this personnel file" is broader than the scope of the newspaper's request, which seeks only those portions of the employee's file "that constitute a record of the performance or lack of performance of the individual in question." In the ensuing discussion, I will focus only upon those documents in the personnel file that would qualify as responsive to the newspaper's request. However, you should be aware that if the remaining personnel records became the subject of an FOIA request, various exemptions from disclosure might apply.
Of the documents you have supplied for my review, I consider the following pertinent to the newspaper's request:
 1. A letter dated October 7, 1998, signed by the Assistant Director and directed to the Commissioners.
 2. An apparent draft of that letter bearing the same date but neither signed nor addressed.
3. Various documents relating to the Executive Director's employment.
4. A directive from the PHA Board to all PHA employees.
 5. An undated report, itemizing various complaints relating to the Executive Director's performance and listing the Board's responses thereto.
 6. A letter dated August 12, 2002, signed by the PHA Board Chairman and directed to the Executive Director.
 7. An unsigned letter, dated April 15, 2003, from the Board to the PHA Executive Director terminating her employment and reciting the bases for doing so.
In my opinion, all of the documents itemized above constitute "employee evaluation/job performance records" under the FOIA. The FOIA does not define the phrase "employee evaluation or job performance record," nor have the courts found occasion to do so. The Attorney General has consistently taken the general position that records relating to an employee's performance or lack of performance on the job are properly classified as job performance records under the FOIA. See, e.g., Ark. Ops. Att'y Gen. Nos. 2003-073; 2002-047; 2001-203; 96-132; 91-324. Formal, written employee evaluations of course fall into this category. In addition, this office has previously opined that documents such as written reprimands and letters of caution, documents upon which a recommendation for dismissal was based, and letters related to promotions and demotions are "job performance records." See, e.g., Ops. Att'y Gen. Nos. 2001-203; 99-147; 93-105, 93-055, 92-231, 92-191, 91-324, and 91-303.
The FOIA dictates that job performance records be released only if the following three conditions have been met:
 (1) There has been a final administrative resolution of any suspension or termination proceeding;
 (2) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (3) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).[1]
With respect to the first of these requirements, you report that the former employee may yet avail herself of the opportunity to appeal her termination to the PHA Board. It would thus be inappropriate to release any of her job performance records at this time. However, you have specifically asked whether disclosure would be warranted "after the final Administrative Resolution of her status." I will therefore proceed to consider the final two elements that might mandate disclosure.
The letter of termination directly acknowledges that the records itemized above reflect the basis for the PHA Board's action. Moreover, given that the PHA is reportedly resisting post-administrative appeal disclosure based purely on the "compelling public interest" prong of the above test, I gather that the PHA is conceding that the records itemized above indeed formed a basis for the employee's termination. I will focus my discussion, then, on whether a compelling public interest exists to disclose these documents.
The FOIA at no point defines the phrase "compelling public interest." However, a leading commentator on the FOIA has provided some guidelines for making the factual determination whether such an interest exists.See Watkins, The Arkansas Freedom of Information Act (m m Press, 3rd ed. 1998). He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. Professor Watkins additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
In the present case, I am struck by the fact that the PHA Executive Director is a prominent public figure charged with significant responsibilities. Even without addressing the question of whether her reported conduct might be characterized as constituting a breach of trust, I believe the public has a strong interest in knowing both the nature of alleged misconduct by so highly placed an official and the nature of the response thereto by the PHA Board. Accordingly, notwithstanding your apparent conclusion to the contrary, once this matter is administratively resolved, I believe the custodian of these records should produce the itemized documents to the extent they served as a basis for the dismissal.
I should note that if circumstances develop that would warrant releasing some or all of the above referenced documents, you should further review the particular documents to determine whether they contains specific information that is exempt from disclosure under any of various other exemptions. Certain types of information should invariably be redacted from a record prior to its release. For example, you should redact any social security numbers contained in released documents. See, e.g., Op. Att'y Gen. No. 99-011, citing 5 U.S.C. § 552a (the "Federal Privacy Act"). You should likewise redact unlisted telephone numbers. See, e.g., Op. Att'y Gen. No. 99-054. More generally, where the facts indicate that a particular individual has a heightened privacy interest, the home address and listed telephone number should be redacted as well. See Stilley v.McBride, 332 Ark. 306, 965 S.W.2d 125 (1998); Ops. Att'y Gen. Nos.2001-123; 99-054. Furthermore, the home addresses of nonelected municipal employees, like their county and state counterparts, will soon be exempt from disclosure pursuant to Act 213 of 2003, which amended A.C.A. §25-19-105(b)(13). Some records may also contain references to other employees, in which case you will need to determine whether these references are independently exempt from disclosure as personnel records or employee evaluation/job performance records of the referenced co-workers. I will note that the above listed documents contain references to disciplinary action taken against several of the Executive Director's co-workers. Finally, you should further consider the possible applicability of an exemption under federal law, including any pertinent HUD regulations.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] This standard differs considerably from the standard applicable to "personnel records," which are exempt from disclosure under the FOIA if their release would constitute a "clearly unwarranted invasion of personal privacy."